UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN THE MATTER OF

THE EXTRADITION OF             Case No. 6:15-mc-00027-Orl-27TBS
GIOVANNI FERRIOLO,

_____/

## ORDER

This case comes before the Court on Giovanni Ferriolo's Motion to Dismiss Extradition Complaint (Doc. 31), the Government's Response to Defendant's Motion to Dismiss (Doc. 32), Giovanni Ferriolo's Reply in Support of his Motion to Dismiss Extradition Complaint (Doc. 37), Giovanni Ferriolo's Motion for Discovery (Doc. 34) and the Government's response (Doc. 36). A hearing on these matters was conducted August 21, 2015. As stated at the hearing, Giovanni Ferriolo's Motion for Discovery (Doc. 34) is **DENIED**. For the reasons that follow, the motion to dismiss (Doc. 31) is **GRANTED**.

## BACKGROUND

Giovanni Ferriolo was born June 28, 1957, in Palermo, Italy. In 1973 he moved to New York and began work in the pizza business (Doc. 31 at 1). He married his wife in 1977 and that relationship produced three daughters (Id. at 2). While married, Ferriolo began a romantic relationship with his now common-law wife, Nereida Cotto, with whom he had a son in 1983. Ferriolo moved back to Italy in 1987 where he lived until 1994 when he returned to the United States (Id. at 2-3). Between 1987 and 1994, Ferriolo traveled to New York two or three times each

year (Id. at 2).  By his account, these trips were to visit Ms. Cotto and their son (Id.). After moving back to the United States in 1994, Ferriolo divorced his wife and moved to the Orlando, Florida area in 1995.  He has made no attempt to conceal his identity or whereabouts while living and working in the pizza business in Orlando (Id. at 3).

Ferriolo was convicted *in abstentia* in 1998 for criminal association and international trafficking in drugs.[1] He was aware of the trial *in abstentia* and appointed a defense lawyer to represent him in the Italian court (Doc. 1, ¶ 3). Ferriolo was initially sentenced to seventeen years imprisonment and a fine of Lit. 100.000.000 (Doc. 1-1 at 38).  On June 30, 1999, the Court of Appeal of Reggio Calabria reversed and lowered Ferriolo's sentence to sixteen years and six months of imprisonment and a fine of 56,810 Euros (Doc. 32-1 at 12).  The decision became final by a judgment delivered by the Court of Cassation on January 11, 2001 (Doc. 1-1 at 37).  On June 19, 2012, Italy issued a European arrest warrant for Ferriolo based on his conviction *in abstentia*.  (Doc. 1 at 2).

Italy submitted a diplomatic note dated November 12, 2013, to the United States requesting the extradition of Ferriolo to Italy (Doc. 1-1 at 34-35).  Italy made its request pursuant to an Instrument as contemplated by Article 3(2) of the Agreement on Extradition between the United States and the European Union signed June 25, 2003, as to the application of the Extradition Treaty between the

---

[1] According to the documents provided by the Italian government, the initial judgment was entered by the Court of Reggio Calabria on June 23, 1998 (Doc. 1-1 at 37), but the complaint refers to a trial occurring on August 20, 1998 (see Doc. 1, ¶ 3).

Government of the United States and the Government of the Italian Republic signed October 13, 1983, which entered into force on February 1, 2010 (the "Treaty") (Docs. 1; 1-1 at 2-13).  After receiving the request, the United States asked for more information which Italy provided on September 10, 2014 (Doc. 1-1 at 15, 47-48).

On March 25, 2015, the United States filed this action for extradition (Doc. 1) and obtained a warrant to arrest Ferriolo (Doc. 5).  On March 27, 2015, Ferriolo was arrested and he is currently being detained without bond (Id.).  The Government's complaint alleges that Ferriolo was convicted of trafficking and selling cocaine from the New York area to Reggio Calabria, Naples, Palermo, Rome and other Italian cities in complicity with co-defendants during a period ending in August 1994 (Doc. 1, ¶ 3).  An attorney in the Office of the Legal Advisor of the United States Department of State has provided the Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made (Doc. 1-1 at 15-16).

Ferriolo admits the Court has jurisdiction over him, that there is an applicable extradition treaty that is in full force and effect between the United States and Italy, and that he is the person sought.  He seeks dismissal of the extradition complaint on the grounds that: (1) Italy has failed to provide all documents required by the Treaty; (2) Italy's probable cause showing is insufficient; (3) there is not sufficient information for Ferriolo to concede or contest whether the dual criminality requirement has been met; and (4) Italy's 20-year delay in seeking his extradition violates his rights of due process (Docs. 31, 37).

**LEGAL STANDARD**

"In the United States, extradition is governed by the federal extradition statute." Cheung v. United States, 213 F.3d 82, 87 (2d Cir. 2000); *see also* 18 U.S.C. § 3181-3196. "Section 3184 of the statute mandates that extradition must be based on a treaty or convention." Cheung, 213 F.3d at 87. Pursuant to this section, the Executive Branch remains primarily responsible for extradition. Martin v. Warden, Atlanta Pen, 993 F.2d 824, 829 (11th Cir.1993). "The inquiry conducted by an 'extradition magistrate' is limited. See 18 U.S.C. §§ 3181-95. The extradition magistrate conducts a hearing simply to determine whether there is evidence sufficient to sustain the charge [against the defendant] under the provisions of the proper treaty or convention. 18 U.S.C. § 3184. If the evidence is sufficient, the extradition magistrate makes a finding of extraditability and certifies the case to the Secretary of State. Id. at 828. This limited judicial function is carried out by conducting the hearing pursuant to 18 U.S.C. § 3184, determining whether the accused is subject to extradition, and, if so, certifying this to the Secretary of State." In re Extradition of Nunez-Garrido, 829 F. Supp. 2d 1277, 1281 (S.D. Fla. 2011). In making an extradition determination, a judicial officer considers: (1) whether a valid extradition treaty exists; (2) whether the crime charged is covered by the treaty; and (3) whether the evidence presented to the judicial officer is sufficient to sustain the charge under the provisions of the treaty. Cheung, 213 F.3d at 87-88.

The standard of proof for extradition is probable cause. See Yapp v. Reno, 26 F.3d 1562, 1564 (11th Cir.1994). "Probable cause is established when the

evidence presented supports a reasonable belief that a fugitive committed the charged offenses." In the Matter of the Extradition of Lehming, 951 F. Supp. 505, 514 (D. Del.1996). Conclusory statements do not satisfy the probable cause standard for extradition. United States v. Fernandez -Morris, 99 F. Supp.2d 1358, 1365 (S.D. Fla. 1999) citation omitted).

When a person is convicted *in absentia*, the judgment is treated as a charge, not a conviction. "Because Defendant [was] convicted in absentia, that conviction is only considered a charge of a crime rather than a conviction for purposes of the Court's probable cause analysis." United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999) (citing In re Mylonas, 187 F. Supp. 716, 721 (N.D. Ala.1960) (denying extradition where *in absentia* conviction was obtained more than three years before Greece made its extradition request)).

## LACK OF DOCUMENTATION

Article X ¶ 2(c) 3(b) of the Treaty requires that Italy submit "the texts of the laws describing the essential elements and the designation of the offense for which extradition is requested." These legal texts must be furnished in Italian and English. Article X ¶ 6. According to the Italian court of appeal's order, Ferriolo was convicted of counts "C" and "D" and acquitted on counts "F" and "G." (Doc. 32-1 at 6, 8).

Under count "C," the laws Ferriolo was convicted of violating include "criminal offense contrary to section 73 (1) (2) (3), of Consolidated Text 309/90" (Id., at 6). Italy provided an English translation of part, but not all of, section 73 (Doc. 321 at 22). It did not provide an Italian version of section 73. Missing from

-5-

the English translation of Section 73 is Article 17, which is referenced in section 73 (2); the schedules set out in Article 14, which are referenced in section 73 2bis.; and schedules II and IV set out in Article 14, which are referenced in section 2(4) (Id.).

Under count "D," Ferriolo was convicted of laws including sections 73 (1) and (4), section 80 (1) and (2), section 81(2), and section 112(2) (Id., at 6). The above discussion concerning section 73 also applies to count "D." In addition, Italy failed to provide a copy of section 80. It produced section 81 in English, but not Italian, and section 81(2) is missing (Exhibit 5). Italy did not provide an English language version of section 112(2) and is questionable whether section 112(2) was furnished in Italian.

The Government acknowledges the missing documents but argues the point of the Treaty's requirements pertaining to documentation is to give the defendant notice of what he is being charged with and the record here is replete with references to cocaine so there can be no doubt about what Ferriolo's convictions involved.

The Government also attempted to cure this problem in part by providing a Google translation of section 80(1) and (2). Ferriolo objected and the Court agrees that the translation does not satisfy the requirements of 18 U.S.C. § 3190 which provides for the admission in evidence of properly authenticated documents, or the requirements of Article 10 of the Treaty which provides for documents bearing the certificate or seal of the Italian Ministry of Justice or Ministry or Department responsible for foreign affairs. Article X ¶ 7.

Now, the Court finds that Italy and the United States violated the express provisions of the Treaty. The Court also finds that the failure to provide all of the documents required by the Treaty unfairly impairs Ferriolo's ability to concede or contest whether the dual criminality requirement has been met.

## PROBABLE CAUSE

Ferriolo contends that the Government failed to establish probable cause which he submits is fatal to the extradition complaint. The probable cause evidence is located in the Italian prosecutor's summary (Doc. 1-1 at 38-40), and the Italian appellate court's June 30, 1999 order (Doc. 32-1 at 2-13).

A. Prosecutor's Summary

The Italian prosecutor's summary states that "Ferriolo was accused of being a member of several associations for purposes of delinquency, aimed at trafficking in drugs, and of having taken part in several episodes involving the import of narcotic substances ... committed both in the USA and several Italian cities." (Doc. 1-1 at 38). The Italian prosecutor set forth the following facts established by the Italian judgment: in connection with an investigation by the Italian and American police into criminal activity involving trafficking in narcotic substances by Aniello Ambrosia it emerged through telephone tappings that Ambrosia had contacts with "Sicilian members" Calogero Salemi, Alfio Lombardo, Giuseppe Fontana, and Ferriolo, in the last months of 1993 (Id. at 39). The majority of the calls took place in November 1993 between Ambrosia, Fontana, and Lombardo, as well as between Lombardo and Salemi. All of the intercepted telephone calls contained "disguised references to a forwarding of cocaine." (Id.).

The summary makes specific reference to three calls between Lombardo and Salemi: in the first, Salemi tells Lombardo to call "Giovanni"; in the second, Lombardo calls Ferriolo and makes him an appointment in the city of Palermo; and in the third, Lombardo calls Salemi to confirm the appointment has taken place (Id.). Ferriolo traveled to New York on December 17 and returned to Italy on December 22, 1993 (Id.). In a telephone call at that time, Lombardo and Salemi indicate that Ferriolo is the person entrusted with the transport of sweets to Salemi in the United States (Id.).

There were several subsequent telephone calls between Lombardo and Salemi as to the whereabouts of "Peppe", whom the prosecutor describes as "clearly the consignee ... of a part of the drug sent by Salemi to Italy." (Id.). Subsequent telephone calls revealed that Ferriolo took part in the search for "Peppe" and that the search ended on January 7, 1994, "on which date they agreed by telephone that the 'item' brought from America should be withdrawn before by Lombardo and not by 'Peppe.'" (Id.). Then Lombardo appears to scold Ferriolo "for an initiative he should not have taken." (Id.). A later conversation between Lombardo and "Peppe" established that Fontana was "Peppe" (Id. at 40).

In a telephone call on January 9, 1994, between Lombardo and Fontana, Ferriolo's role as a "carrier" was discussed and he was censured for "behaving in a different manner from that agreed." (Id.). Lombardo subsequently called Salemi and left a message that Ferriolo was "responsible for the fact." (Id.). On the same day, photographic evidence captured Fontana going to Lombardo's house where they called Salemi "reasserting the unreliable behavior of Ferriolo." (Id.).

-8-

Notwithstanding "such difficulties with Ferriolo, his relations with Fontana and Salemi continued." (Id.).

Ferriolo left for New York on February 10, 1994, and returned February 17, 1994. He was searched at the airport in Italy and found in possession of a little less than one gram of cocaine (Id.). Ferriolo was not arrested or prosecuted for possession of this cocaine (Doc. 31 at 20). Three days after his return, Ferriolo was contacted by Salemi for "a new travel to the U.S.A." and invited to speak with a cousin of his named "Toto." (Id.).

In March 1994 there were other contacts between Fontana and Ferriolo for the purchase of furniture for a pizza restaurant, as well as conversations with Salemi and Lombardo in which it always came out that Ferriolo owed them money (Id.). The Italian prosecutor concluded that "such relations were of unlawful nature" because "Fontana never worked in restaurant furniture." (Id.).

B. Opinion of the Court of Appeals

The opinion of the Italian Court of Appeals of Reggio Calabria (Doc. 32-1 at 2-13) outlines the following facts concerning Ferriolo's conviction: he had business contacts with Salemi, Lombardo and Fontana (Id. at 8). Salemi and Lombardo were surely engaged in cocaine trafficking (Id. at 9). Ferriolo owed money to Salemi and Lombardo for the purchase of drugs (Id.). Ferriolo had repeated contacts with Salemi in the United States (Id.). The alleged justification for the association between Ferriolo and Lombardo, that Ferriolo intended to open a pizzeria in Sicily, could not be substantiated (Id.). The telephone calls occurred in 1993 and the meetings were in April 1994 (Id.). A continuous and stable

connection with Ferriolo acting as a buyer of the cocaine imported from America "can be inferred" from telephone conversations during which Salemi addressed Lombardo's misgivings about Ferriolo's conduct and said "I told him not to be clever this time." (Id.). The Italian court concluded that this statement supported a finding that there had been preceding times (Id.). "Ferriolo's role was not just that of simple occasional buyer can be inferred from the close relationships with Salemi." (Id.). Based on Ferriolo's repeated contacts and visits with Salemi, the court concluded "the contacts at issue cannot but have concerned drug trafficking." (Id. at 10).

While the Italian court did not exclude the possibility that Ferriolo may have had furniture to sell, it rejected the idea that Ferriolo's relationship with Fontana could only be in connection with the purchase of furniture for a pizzeria (Id.). The court concluded from the information gathered from recorded telephone calls that "the aim of those meetings only was drug trafficking." (Id.). The court said "the interest shown by Salemi and Lombardo for a meeting as early as possible would not make sense" if those meetings were only concerned with the sale of furniture (Id.).

During a December 24, 1993 telephone call, there is reference to the transfer of "nougat" between Lombardo and "Aunt Nancy." (Id.). The Italian court ruled out the possibility that "nougat" could refer to something besides cocaine because "the business carried out by Salemi, Ambrosia, and Lombardo exclusively concerned drug trafficking and, in particular, cocaine trafficking." (Id. at 11). "The

word 'nougat' used in the intercepted phone conversation necessarily had to refer to something illegal and there are no grounded reasons that can arouse the suspicion that it was not drugs." (Id.).  The Italian court also concluded that the use of the words "five hundred" was a reference to drugs (Id.).

One witness, Carmelo Mutoli, who the defense characterized as a mafioso, said he did not know Ferriolo or the illegal activity Ferriolo was charged with (Doc. 32-1 at 11).  The court found this testimony insignificant and irrelevant (Id.).  It also found inconsequential the testimony of United States F.B.I. agents who said Ferriolo's name did not come up in their investigations (Id.).

The Italian court concluded that, "Ferriolo's role cannot be limited to that of a simple occasional drug buyer; on the contrary, he is an individual directly and constantly involved in organizing Salemi and Lombardo's (American and Italian) business and, consequently, the drug[s] purchased and the debts incurred on those occasions go beyond single transactions and are just a part of the complex structure of the organization whose objective he helped to attain."  (Id. at 11-12).

C. Discussion

Ferriolo relies on the case of In the Matter of the Extradition of Luigi Ribaudo, Case No. 00 CRIM.MISC.1PG.(KN., 2004 WL 213021 (S.D. N.Y. Feb. 3, 2004), which the Court finds instructive.  There, the district court found, on more detailed facts than are present here, that the United States failed to show on behalf of Italy that there was probable cause to believe a defendant committed the crimes with which he was charged by Italy.  Id. at *11.  As that court noted, "[p]robable

cause, for purposes of the extradition statute, is established if the evidence presented supports a reasonable belief that the person whose extradition is sought is guilty of the crime charged. The standards for determining whether probable cause is established are the same as those set forth in Rule 5.1 of the Federal Rules of Criminal Procedure. Moreover, in making a probable cause determination, a judicial officer should consider the 'totality of the circumstances' and 'make a practical, common-sense decision' whether the evidence is sufficient to sustain a finding of probable cause." Id. at *5 (citations omitted). Taking into consideration the totality of the circumstances, the Court finds that the evidence presented by the United States on behalf of Italy does not support a reasonable belief that Ferriolo is guilty of the crimes charged.

Without English translation copies of certain of the statutes Ferriolo allegedly violated, the Court cannot determine whether there is probable cause to believe the elements of those crimes has been shown. Therefore, as to the charges for which the Court did not receive the applicable statutes, a finding of no probable cause is compelled. The Court must evaluate the sufficiency of the evidence to determine whether there is probable cause to believe Ferriolo violated the statutes for which the necessary documentation has been provided.

The intercepted telephone conversations and other evidence presented do not establish probable cause to believe Ferriolo was transporting illegal drugs between the United States and Italy. Missing is evidence to show when Ferriolo purportedly served as a courier; what illegal drugs he supposedly carried; the

quantity of illegal drugs Ferriolo allegedly transported; or the sale or purchase of illegal drugs by Ferriolo. No witness has stated that Ferriolo was involved in drug trafficking; no surveillance evidence shows he involved in drug trafficking; and none of the recorded telephone calls implicate him in drug trafficking.

The intercepted conversations that are incriminating do not include or specifically reference Ferriolo. Other conversations reference the delivery of sweets or nougat and the purchase of restaurant furniture. Without any bases for its conclusion, the Italian court assumes these are veiled references to cocaine and heroin. And, while the Italian court considers Ferriolo to be at the top of the pyramid orchestrating the conspiracy, in the prosecutor's summary, Ferriolo appears to be a mere courier. At a minimum, this unexplained inconsistency draws both versions into doubt.

## VIOLATION OF DUE PROCESS

It appears the Italian government could have easily located Ferriolo and sought his extradition at any time after his convictions became final. For reasons not made known to the Court, Italy waited approximately twenty years before seeking to extradite Ferriolo. This is concerning but, as Ferriolo concedes, there does not appear to be any case law supporting his claim that the delay rises to the level of a due process violation, and the Court is not required to reach this issue to decide the case. Accordingly, the Court expresses no further opinion on this argument.

## CONCLUSION

"The extradition hearing is not a trial on the merits to determine guilt or innocence, but serves as a means of ensuring that probable cause exists to believe the person whose surrender is sought has committed the crime for which his extradition is requested." Castro Bobadilla v. Reno, 826 F. Supp. 1428 (S.D. Fla.1993), aff'd, 28 F.3d 116 (11th Cir.1994).  A finding of probable cause means there is sufficient evidence to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the guilt of the accused. United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999) (citing Coleman v. Burnett, 477 F.2d 1187, 1202 (D.C. Cir.1973)). The Government has not provided all of the documentation which the Treaty requires, and it has failed to show probable cause to believe Ferriolo committed the offenses for which he was convicted *in absentia*.  Accordingly,

(1) The motion to dismiss is GRANTED and the Government's complaint is dismissed with prejudice.

(2) Ferriolo shall be immediately released from custody.

(3) The Clerk shall terminate as moot any pending motions, and close file.

**DONE and ORDERED** in Orlando, Florida on September 1, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Counsel of Record
    Defendant
    United States Marshal